**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FREDERICK W. SIDERS, | ) | |
| | ) | CASE NO.    1:08-CV-2463 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Frederick W. Siders ("Siders") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

**I. Procedural History**

On May 18, 2005, Siders filed an application for POD and DIB alleging a disability onset

date of July 1, 2004, and claiming that the illnesses, injuries, or conditions that limited his ability to work included high blood pressure, left ankle, major depression and bipolar, right knee, and anxiety with panic attacks. (Tr. 62-63.) His application was denied both initially and upon reconsideration. Siders timely requested an administrative hearing.

On March 13, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Siders, represented by counsel, testified. Mark A. Anderson testified as the vocational expert ("VE"). On April 4, 2008, the ALJ found Siders was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Siders claims the ALJ erred: (1) by failing to find that Siders's impairment meets a listed impairment where substantial evidence demonstrates that such listing was satisfied; and, (2) by not fully and fairly evaluating the limitations caused by Siders's severe impairments.

## II. Evidence

*Personal and Vocational Evidence*

Born on July 10, 1965, and age forty (40) at the time of his administrative hearing, Siders is a "younger person" under social security regulations. *See* 20 C.F.R. § 404.1563(c). Siders has a high school diploma and past relevant work as a truck driver and laborer. (Tr. 20.)

*Medical Evidence*

On April 15, 2005, x-rays were performed on Siders's left ankle and right knee. (Tr. 335- 36.) With respect to the right knee, the exam was negative, though it was noted that an MRI

may be a diagnostic benefit if clinical symptoms warrant such an exam. *Id*. The exam of the left ankle revealed arthrodesis of the ankle with a screw extending through the distal fibula and tibia and a second one traversing the lateral malleolus and the talus. (Tr. 335.) A third screw traversed the medial malleolus and talus. *Id*. The screws were intact. *Id*. Partial osseous arthrodesis was present, as well as secondary degenerative changes at the residual tibiotalar articulation. *Id*.

On April 25, 2005, Siders underwent a behavioral health intake evaluation. (Tr. 359.) His symptoms included mild depression, anxiety/panic attacks, poor impulse control, polysubstance use, and assaultive behavior. (Tr. 362-363.) The diagnostic impression ruled out bipolar disorder and personality disorder. *Id*. Siders was ascribed a Global Assessment of Functioning ("GAF") score of 40 and it was indicated that, during the past year, his GAF was between 35 and 45.[1] *Id*.

On May 11, 2005, Siders received behavioral health counseling, and it was noted that his prescribed medications seemed to be helping his mood swings. (Tr. 346-47.) Siders admitted to a long history of alcohol abuse, but appeared willing to start Alcoholic Anonymous ("AA") treatment again. *Id*. He had been diagnosed with depression and was taking psychotropic medication. *Id*. His mood was upbeat and positive. *Id*.

On June 15, 2005, Siders was seen in the Orthopedics department of the VA Hospital

---

[1] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. A person who scores in this range may have illogical or irrelevant speech, and may avoid friends, neglect family, and be unable to work. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

3

complaining of increased pain with weight bearing on the left ankle. (Tr. 343.)

On June 30, 2005, Siders underwent a Computed Tomography ("CT") of his left lower extremity. (Tr. 308.) The CT revealed status post triple arthrodesis with partial fusion of the tibiotalar joint and complete fusion of the talofibular joint. *Id.* Associated degenerative changes were identified both anteriorly and laterally. *Id.*

On July 12, 2005, Siders was seen for a follow-up concerning his complaints of left ankle pain. (Tr. 329.) He received a marcaine injection into the subtalar joint to alleviate the pain. (Tr. 329).

On July 25, 2005, Ata Ulhaq, M.D., FACEP, MPH, performed an internal medical examination of Siders at the State Agency's request. (Tr. 123-135.) Dr. Ulhaq noted that Siders had off-and-on rehabilitation and retraining for chronic alcoholism, but Siders continued to indulge in alcohol. (Tr. 124.) Siders walked with a cane due to approximately five surgeries to his left ankle after sustaining a fracture in 2000. (Tr. 123-28.) Dr. Ulhaq noted an obvious deformity of Siders's left ankle extending down to the dorsum of the foot. (Tr. 128.) The deformity was "also associated with a moderate amount of muscle wasting, both in the thigh and calf muscles as well as the ankles and foot muscles." (Tr. 128.) Sensory examination of the left lower extremity revealed paresthesias and numbness in the dorsum of the foot and on the lateral aspect of the foot and the lateral ankle. *Id.* There was minimal plantar extension or dorsiflexion of the left ankle and foot and no lateral movement of the ankle. *Id.* Siders's score on the Beck's depression scale, 44 of 63 points, suggested a moderate to severe depression. (Tr. 126.) Dr. Ulhaq's clinical impression was moderate to severe depression, poor psychosocial reading, alcoholism, and, moderate to severe pain in the left ankle associated with an ongoing acute

inflammatory process. (Tr. 129.) Dr. Ulhaq opined that Siders would "not be able to have any gainful employment and that rehabilitation would be the first choice before any trial of gainful employment or helping his business." (Tr. 130.)

On August 19, 2005, clinical psychologist Richard Halas, M.A., performed a psychological evaluation of Siders at the request of the Bureau of Disability Determination. (Tr. 136-39.) Halas noted that Siders's overall presentation was assessed as being within normal limits in that he did not have specific problems with hallucinations, delusions, paranoid ideation or misinterpretations. (Tr. 137.) His concentration skills were intact. *Id*. He did, however, have moderate levels of anxiety. *Id*. Halas diagnosed Siders with depressive disorder not otherwise specified, generalized anxiety disorder, alcohol abuse disorder, and mixed personality disorder. (Tr. 139.) Siders was ascribed a GAF score of 55.[2] *Id*. Halas opined that Siders would have moderate limitations in his ability to relate to others, but his ability to understand and follow through with simple instructions remained intact. *Id*. Siders was assessed as having marked limitations in his ability to withstand the stress and pressures associated with most day to day work settings. *Id*.

On September 18, 2005, Kristen Haskins and David Dietz, Ph.D., completed a mental residual functional capacity ("RFC") assessment and found no marked limitations in any category. (Tr. 166-69.) They opined that Siders retained "sufficient residual mental capacity for simple and some moderately complex tasks in a setting where he can work in isolation or with

---

[2] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34

5

only 3-4 others and where only superficial relating is required in a low stress setting." (Tr. 169.) They also noted he had been doing better while on medication. *Id.*

On October 17, 2005, Siders told orthopedic surgeon James Delullo that a previous injection to the subtalar joint yielded only a few hours of pain relief. (Tr. 325.)

On October 27, 2005, Siders was seen for an evaluation concerning his left foot pain. (Tr. 325.) The physical therapist conducting the examination noted atrophy of the anterior and posterior compartments of the left foreleg and a very limited range of motion, with dorsiflexion and plantar flexion essentially zero. *Id.* Siders indicated pain "with range of motion and also with weight bearing." *Id.*

On November 21, 2005, Siders telephoned the VA stating that he was having "an episode" and "thinking about doing something he shouldn't." (Tr. 324.) He admitted to drinking a twelve-pack of beer. *Id.* Siders was contacted a few days later, at which time he reported that he was feeling better and was spending the day with a support person and friend. (Tr. 323.)

On May 6, 2007, Siders presented at the emergency room complaining of suicidal ideation and possible homicidal ideation after drinking six beers and ingesting THC, a psychoactive substance found in cannabis, the day before. (Tr. 428.) Siders was admitted to the VA Center the following day for psychiatric evaluation and treatment. (Tr. 196.) He was discharged on May 16, 2007 with a diagnoses of bipolar disorder with psychotic features versus schizoaffective, alcohol dependence, marijuana and cocaine abuse, and antisocial personality traits. (Tr. 199.) He was ascribed a GAF score of 55. *Id.*

*Hearing Testimony*

At the hearing, Siders testified that he has problems with his left ankle and right knee, that he uses a cane, and that he could only walk short distances – approximately one-hundred (100) feet – without difficulty. (Tr. 525.) *Id*. He has difficulty climbing stairs and requires a railing to hold onto. (Tr. 527.) He stated that he can stand for approximately twenty minutes or a half hour. (Tr. 526.) He has no difficulty using his hands while in a seated position. *Id*. He rides a four-wheeler to take the garbage out. (Tr. 528.) His ankle swells on a daily basis, and he elevates it for a couple of hours a day to reduce the swelling. *Id*. He does not have difficulty sitting, but some less severe swelling may occur as a result. *Id*. However, he believes his ankle problems have become worse since June of 2004. (Tr. 531.)

Siders also stated that he suffers from depression and/or bipolar disorder causing him to "get mad easy." (Tr. 528.) He further stated that his mental problems interfere with his ability to get along with others and handle stress. (Tr. 529.) Furthermore, his ability to concentrate for more than a few minutes was also affected. (Tr. 530.) He testified that he had not consumed alcohol in a few months and was involved in a drug and alcohol rehabilitation program called "Stepping Stone." (Tr. 529, 532.) Later he stated that he had a single beer a month earlier. *Id*. He stated that he had not used an illegal substance in almost six months. *Id*.

The VE testified Siders's past relevant work as a truck driver is categorized as semi-skilled and was performed at the medium exertional level. (Tr. 533.) His work as a laborer is classified as unskilled and was performed at the very heavy exertional level. *Id*.

The ALJ posed a hypothetical question in which he limited the individual to light work, noting that he uses a cane in the right hand but can only stand/walk four out of eight hours. (Tr.

7

533-34.)  Additionally, the individual would be limited to short simple instructions, simple and repetitive tasks, and low stress work.  (Tr. 534.)  The VE identified a number of jobs at the light and sedentary exertional levels that such a person could perform.  (Tr. 535.)  The ALJ then posed a second hypothetical with additional limitations.  (Tr. 535-36.)  Such an individual would have the same physical limitations, but would not have the ability to understand and follow only short simple instructions or to maintain attention sufficient to perform simple repetitive tasks, could not withstand the stress of daily work, could not remember locations and procedures, would have difficulty performing activities within a schedule, could not travel or use public transportation, and could have no interaction with the public and co-workers.  *Id.*  The VE testified that such a person would be unemployable.  (Tr. 536.)

Defense counsel presented a different hypothetical question to the VE in which the subject was limited to lifting ten pounds occasionally and less than ten pounds frequently; to standing or walking for two hours in an eight-hour workday, but only for ten to fifteen minute periods; and, to sitting six hours.  (Tr. 536.)  The subject had further limitations on pushing and pulling in the lower extremities, with no climbing, balancing, crouching, and, with no exposure to hazards.  The VE responded that there would be unskilled sedentary jobs available for such an individual. (Tr. 536.)  Counsel then added an additional limitation that such an individual would have a marked limitation[3] in his ability to deal with the stress of the work place.  (Tr. 536-37.)  The VE testified that there would be no work for such an individual.  *Id*.

---

[3] "Marked" was defined as an inability to complete a normal workday 1/3 of the time without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 537.)

8

**III. Standard for Disability**

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[4]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when she became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Siders was insured on his alleged disability onset date, July 1, 2004 and remained insured through September 30, 2005. (Tr. 16.) Therefore, in order to be entitled to POD and DIB, Siders must establish a continuous twelve month period of disability commencing between July 1, 2004 and September 30, 2005. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[4] The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Siders established a medically determinable, severe impairment, due to osteoarthrosis and allied disorder, alcohol and drug addiction, and affective disorders.  (Tr. 17.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id*.  Siders is unable to perform his past relevant work, but has a Residual Functional Capacity ("RFC") for a limited range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and the VE testimony to determine that Siders is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI.  Analysis

Siders claims the ALJ erred: (1) by failing to find that Siders's impairment meets a listed impairment where substantial evidence demonstrates that such listing was satisfied; and, (2) by

not fully and fairly evaluating the limitations caused by Siders's severe impairments.  Each will be discussed in turn.

*Listing 1.03*

Siders argues that substantial evidence demonstrates that he met or equaled the requirements necessary under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.03.  (Pl.'s Br. at 8-9.)  He cites some of the evidence of record and asserts in a conclusory manner that such evidence satisfies the criteria of Listing 1.03.  *Id*.

A decision should be affirmed if substantial evidence supports the ALJ's decision.  It is immaterial if substantial evidence also supports a claimant's position.  *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (an ALJ's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence also supports the claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant);  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision).  Siders appears to misconstrue the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Because of the nature of the substantial evidence standard, Siders cannot establish that the ALJ's opinion was unsupported by merely pointing to evidence of record that could support

the opposite conclusion. Instead, to raise a cognizable claim, he must demonstrate that there is insufficient evidence in the record that would allow a reasoning mind to accept as sufficient the ALJ's conclusion.

Listing 1.03 concerns "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." Effective ambulation in 1.00B2b is defined as follows:

> b. What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> ***
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

In his opinion, the ALJ found that Siders's "osteoarthrosis did not meet or equal listing 1.03 or 1.02 [as] [t]he claimant was able to ambulate with a cane and there is no evidence or medically acceptable imaging of pathology that would have met or equaled a listing." (Tr. 22.)

The ALJ relied on testimony and evidence that Siders could walk with a cane. There was no evidence that Siders required a walker which would limit the use of both of his upper extremities. Such evidence is sufficient to support the ALJ's determination. The ALJ did not err by finding that Siders failed to meet or equal Listing 1.03.

*Full and Fairly Evaluating of Limitations*

In his second assignment of error, Siders argues the ALJ erred by not "fully and fairly" evaluating his impairments. (Pl.'s Br. at 10-12.) First, Siders asserts that the "ALJ unreasonably reject[ed] Dr. Ulhaq's opinion that [he] is unable to perform gainful employment." (Pl.'s Br. at 10.) A medical source's conclusion that Siders is "unemployable" does not constitute a medical opinion, and, therefore, is not entitled to any special weight. An opinion that a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute a medical opinion. 20 C.F.R. § 404.1527(e). An ALJ need not give any weight to a conclusory statement of a treating or examining physician that a claimant is disabled. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) ("Since it was not Dr. Larrick's prerogative to make the legal determination of disability, the ALJ was not bound by his conclusory statement."); *Duncan v. Sec' of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," as it is the Commissioner who must make the final decision on the ultimate issue of whether an individual is able to work. *See* 20 C.F.R. § 404.1527(e)(1); *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Siders also avers that his mental limitations were not adequately evaluated. He claims

that the ALJ erred by relying upon the opinions of non-examining state agency physicians, rather than upon the opinion of Mr. Halas, who performed a consultative psychological evaluation, and upon VA records. (Tr. 19.) The ALJ found that with alcohol abuse, Siders had marked difficulties in social functioning, but that without alcohol abuse his difficulties in the same area would only be moderate. (Tr. 17, 22.) Pursuant to statute, "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Social Security Administration uses the following procedure to determine whether a claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (a) General. ***If we find that you are disabled and have medical evidence of your drug addiction or alcoholism***, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (emphasis added).

The ALJ plainly followed the proper procedures in his evaluation of Siders's substance abuse. The ALJ found Siders was disabled with substance abuse due to its exacerbation of the mental limitations. Thus, he obviously did not ignore Siders' VA records, which indicated a low GAF score, or discount Mr. Halas's opinion that Siders was markedly limited in his ability to withstand the pressures associated with work. The ALJ found that Siders's social functioning was markedly limited, but that these limitations would improve if he stopping abusing alcohol. Though the ALJ's determination was, by necessity, hypothetical in nature, courts have recognized that the determination of whether substance abuse is a material contributing factor will necessarily be hypothetical when the claimant is actively abusing alcohol or drugs. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).

Finally, Siders believes that the ALJ should have called a medical expert ("ME") to address the effects of alcoholism on his ability to perform work-related activities. (Pl.'s Br. at 12.) Siders, however, cites no law suggesting that the ALJ was required to engage an ME. In fact, "20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony, stating that ALJs 'may . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) ....'" *Simpson v. Comm'r of Soc. Sec.*, 2009 U.S. App. LEXIS 19206 (6th Cir. Aug. 27, 2009) (*citing Davis v. Chater*, 1996 U.S. App. LEXIS 33614, at *6 (6th Cir. Dec. 19, 1996)). As the ALJ was not bound to call an ME to testify, it was not reversible error for him to decline to do so.

Therefore, Siders's second assignment of error is without merit.

15

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White<br>U.S. Magistrate Judge

Date: November 18, 2009